Good morning, Your Honors. Good morning. May it please the Court, I'm Robert Job. I'm appearing today on behalf of the Petitioner, Juswant Singh. This – in this case, the immigration judge made an adverse credibility finding, and he offered three – just three reasons in support of that finding. These are set forth on pages 57 and 58 of the administrative record. For starters, the immigration judge suggested that Mr. Singh had failed to present any meaningful or articulate testimony regarding the political party he joined, the Cali del Mad. He said he was unable to provide any articulate information regarding the party's goals, and that therefore, this testimony was so vague that it's implausible that he could have worked for this political party. Now, this is really set forth on pages 880 – beginning on page 882 of the administrative record. And on this one, I – you know, I just strongly disagree with the immigration judge's finding, because there's simply nothing implausible about Mr. Singh's testimony that, after his father was murdered by black cats, forces associated with the Indian government, he was visited by members of this political party and on page 882, he says, they discussed my father's death with me and the circumstances that led to his death. They explained to me that the only way we could make Khalistan an independent Sikh state, any kind of negotiation with the government. The party is seeking an independent Sikh state. Their focus is human rights abuses committed against the Sikh community. This guy's own father was murdered by, supposedly, the Indian government. There's nothing implausible that he would join this separatist party and work for the separatist party after the death of his father. Well, I thought he – that the problem was – or maybe this is your next point, that the I.J. thought that he was just not sufficiently knowledgeable about this party. Is that the point you're addressing there or not? Yeah. The I.J. said he didn't – he couldn't articulate the goals of the party. That's set forth on the next couple pages. I thought that – I mean, have you done any comparison to other cases? From the cases I read, I thought this guy seemed to know more than most people. Yeah. I tend to agree. I mean, he was very articulate about – the principal point of Akali Dalman is that it objects to the human rights abuses that were being committed against the Sikh community and, based on that, they want an independent Sikh state. If you look at pages 883 and 884, they're asking him, well, why this party? And he says, well, they're doing things in a peaceful manner. But when they say, what else? And he says, well, young Sikhs are being killed in fake encounters. And the documentary evidence fully supports that. He goes on to say that young Sikhs that are being killed are not to be baptized and they're preventing to stop that. If you look at page 1200 of the administrative record, that's an Asia Watch report that says that he's exactly right. Baptized Sikhs, those that comply with the most fundamental tenets of the Sikh faith, were being specifically targeted by the Indian government at this exact same time. I have a question. He took an appeal from the first hearing and the BIA sent it back and gave him another hearing. Right. He chose not to testify at the second hearing. Well, what the BIA did, Your Honor, is said that the immigration judge in his initial decision had not made any explicit credibility determination. They kicked it back so that the immigration judge could make such an explicit credibility determination. And then at that point, the immigration judge, just relying on the testimony that had been previously presented, said, I find he didn't find this the first time around, but looking in view of the board's determination that he had to make an explicit finding, he said, I make an explicit determination that he's not credible. In other words, it wasn't really sent back for a hearing. It was sent back for a credibility determination. To cure that procedural deficiency. He represented at that proceeding. Yes. Yes. But at that point, there wasn't any need to present additional evidence, because the reason for the remand wasn't that there was additional evidence to really be presented. It was that the immigration judge hadn't done, made a threshold determination as to his credibility. And so when it went back, the I.J. made that determination and he made these three points in support of his adverse credibility finding. Did the I.J. find anything wrong with any of his information? Anything was incorrect or inaccurate? No. No. Nothing. The only other things that he was able to point to were these letters that were submitted. I'm still, I was still talking about the No. The political background stuff. No. And actually, you know, when I look at this, I thought that he was very descriptive about the 1991 elections and why they were canceled, the 1992 elections, the boycott. At some point, the brief says, well, the problem is that he didn't know all the other, he knew his own representative, but he didn't know others. First of all, he did know others, but second of all, I suppose if you ask most Americans whom five congressmen are, I don't know how far you'd get. And I think it's important that you take into account, this guy's a farmer with a 10th grade education. You know, he's in this political party because he had some personal experience with persecution at the hands of the government. They killed his father. And he's out there telling people, this is a good thing, they're persecuting our people, we need an independent state. He's not a political theorist. He's a farmer who was persecuted because of his attempt to get a few other people out of custody. So what are the other issues, then? Well, the other issues in the case, Your Honor, relate to these letters that were submitted by Jagmohan Singh. And on this, you know, let me take the second one first. The second one is that he points to this letter from Jagmohan Singh and he says, well, Jagmohan Singh says that he was harassed and suggests that there was some continuous harassment that was never testified to. Well, as the government points out, well, at first, as a threshold issue, he was never asked about this supposed inconsistency. And because he was never asked about it, it really can't count against him. But it's important that this particular kind of thing be raised by the immigration judge because as the government itself recognizes, harassment doesn't rise to the level of persecution, and that in and of itself wouldn't have been grounds for a claim. So it's not surprising that he would not have discussed other forms of harassment besides his arrest in front of the immigration judge in his case in chief. So if the immigration judge had issues about his credibility arising from some supposed discrepancy, you know, in this letter where this author is talking about harassment, well, he should have raised that because, again, Mr. Singh would have not necessarily had any reason to raise that himself in his case in chief. The other thing that the immigration judge raised, the only other thing, is that this letter from Akali Dalman, it doesn't specifically mention that Mr. Singh was arrested. Well, those letters are a little odd because they spend a lot of time on the father and the details of what happened to the father, but they don't really tell you what happened to the son. Well, you know, I guess my starting point on this is... And they're also kind of form letters. It's a form letter. But I would say two things in response to that particular question that you're raising there, Your Honor. I mean, first off, the immigration judge on page 898, he himself recognizes that the author of this letter is not a precipient witness. He doesn't have any firsthand knowledge of any of these events. But, you know, with respect to the murder of his father, who was the local Sarpanch, he was the head man in his village, you know, I would expect that that  might well have had some information about the murder of this head man. But, you know, there were thousands of people being arrested in Punjab at this time, low-level activists. He's not going to have information about every one of these people, and we don't want him putting information in these letters that he really doesn't have any information about. And so he didn't comment upon the arrest of this particular individual because probably he doesn't have any personal information about it. I'm sorry, Your Honor. I was concerned that, or the IJ seemed to be concerned that that last, the one sentence that does reference Mr. Singh was didn't seem to correspond to the facts. So it says, Singh was harassed time and again by the security forces to escape torture and death. He had no choice but to leave India. Right. Whereas he wasn't tortured. He left India. He returned, I guess, a year later. Then he reported, he alleges he reported this incident, and then he was arrested and tortured, and then he left. So there was none of this time and again harassment. Well, yeah. That's what I was saying before, Your Honor. And, see, on that point, again, the immigration judge raised that only at the time he rendered his decision. And, you know, if he thought that there was an inconsistency between Mr. Singh's  And I think it's really important that he raised this in the hearing because this thing about harassment, again, harassment doesn't rise to the level of persecution. It's not the kind of thing that an asylum applicant would necessarily raise in his case in chief. In other words, if he was getting annoying phone calls or things were Or if the police were coming to search his home. He's not necessarily going to raise that stuff. The thrust of his case was the arrest. That's the past persecution. Other little forms of harassment he may well not have raised in his testimony. But if the immigration judge had said, hey, this letter says you were harassed. You haven't really discussed that yet. What's the deal on that? At that point, he would have had the opportunity to say, well, there were other small things along the way besides my arrest. Not necessarily based on my claim. The immigration judge was really suspicious of these letters in general. Right. That's right. But he didn't use those to support his adverse credibility finding. And there were a couple of forensic studies. And the forensic studies came back, as the immigration judge himself said, really without any meaningful information. What about, I'm sorry, you're out of time. Okay. Thank you. I have six seconds left. I might give you 30. All right. Mr. Nazaroff. Good morning again, Your Honors. I think this opposing counsel testified that Mr. Singh is a farmer with only 10th grade education. And this really shows the problems with this case. Who is Mr. Singh? That's not how he describes himself. He talks about his father being a leader in the community. And when he was killed, the party came and tried to persuade him to join. And that since the death of his father, he has been helping village people with problems in the village. He went and submitted a report to the deputy commissioner's office and wrote the complaint and got other people in the village to sign. And within the party, he participated in information activities. And that is all consistent with being a farmer with a 10th grade education? Well, I think, but he doesn't, the argument that the opposing counsel seems to make is that this guy was just transporting. He wouldn't know anything about the party, the very details of the party. But the evidence doesn't compel that. I think he writes that he does public relations. He does information dispensing. He has served as a liaison between the villagers and the police. He's canvassed door to door. He's someone who knows about the party, is trying to get people to join the party, tell them about the specifics of the party. But when it came time to testify, he couldn't, he couldn't, he couldn't articulate. Can you tell me why that is? I mean, I've read, you know, lots of these transcripts now about people in the Punjab and, and this one is the most detailed in terms that I can remember in terms of what he knew and how he articulated. What is wrong with what he did? I don't understand that. Well, I think it goes back to the standard of review, Your Honor, is that, you know, the standard of review is substantial evidence. And that is not may you believe him, but must you believe him. And the burden is on Mr. Sin to present evidence where you must believe him. And I, I, I don't believe that the testimony where he, he's unable to tell.  He knew his, he knew his role. He knew his representative. He knew that they won nine out of 13 seats. He knew four or five other representatives. What, what was he supposed to know as, as a person who was working in a particular area that he didn't know? Well, for example, you know, the current federation president, he didn't know. He wasn't there. I'm sorry, what? He wasn't, he isn't there anymore. Well, well, but someone who has dispensed information about, about the organization and somebody who has, who his persecution claim is based on the fact that he was an active player in this, in this party. He's not based on a claim that he's covered. He was able to get, I'm sorry. No, it's, it's not your fault. It's the, it's the telephone issue. But the, it wasn't based on the fact that he's currently an active person in the party. Well, but your Honor, somebody who's so involved would keep tabs on who is the president of the federation. And he, he was also unable to say who, who was the candidate in 1989. He that's not true. He said, who was the candidate that you were supporting? His name was circuit scene. Um, he was unable to find any knowing of the other candidates. Your Honor. I think that petitioner has not presented any compelling evidence where again, it's not, can you believe him, but must you believe it? And the letters you run are, are inconsistent. The letter does talk about the, the letter from a man on page nine 69 says that Mr. Singh was harassed and by the security forces again and again, but he never mentioned any of those harassments during any of his testimony. He had two opportunities to testify before the immigration. So opposing council says that the IJ should have given Mr. Singh the opportunity to respond to the perceived inconsistency. Is that correct? Well, your Honor, it is our position that opposing council didn't raise that issue before the board. So that issue is not before this court. Finally, um, also in, um, uh, in his reply brief, uh, opposing council indicated that there was a emotion on psychological persecution, uh, due to his father's death and that was also not raised by the board and not exhausted. Um, again, I think the important thing here is the standard of review. Um, the standard review is not, can you believe him? Can you reweigh the evidence as the opposing council is trying to do, but must you believe in that opposing evidence? Opposing council has not presented one piece of evidence where you must, must believe in what that compels. Um, Well, what about the five affidavits by, or four affidavits, uh, by witnesses signed and that the IJ's reason for discounting them was, well, these people are illiterate, but, but there, it says that certified that the affidavit was read and explained to the declarant. Um, why doesn't that compel a determination that the, um, the adverse credibility, um, decision was wrong. Um, what the, uh, Your Honor, could you tell me the pages these are on? It's one, three, six, seven, one, three, seven, one. Okay. The court's indulgence. I'm just going to look. Well, um, one, three, six, seven seems to describe the father that talks about the father. It doesn't talk about the petition. No, it says Mr. Jaswant Singh. He went with Mr. Jaswant Singh to the deputy commissioner to file a complaint against the, then later Jaswant Singh son of Gurdev Singh was arrested by the police and tortured. Well, that doesn't, that doesn't indicate that it was, um, that the torture was on account of his political, uh, it doesn't indicate that, uh, um, that, uh, uh, it doesn't support any of the arguments regarding his activities in the party. Um, an argument that. Corroboration about a particular thing. It's not a corroboration about everything. It's a corroboration about the fact that he was taken by the police and tortured at the pool. The a, the IJ discounted that entirely. I, he didn't believe what was in it as I understand. So he didn't even use it to corroborate that much. And that much certainly could use. Well, again, I think, I believe that goes to the weight of the evidence and that the, um, I don't believe that that compels, uh, the compulsive decision in this case where the basis of this, uh, his argument is that he was persecuted on account, on account of his political, uh, uh, that, that's the main issue in the case that he has persecuted on account of his activities with the party. Not because you reported, um, not because he filed a complaint against the police at no point in time. Did he ever argue that, uh, and actually, uh, that, um, that he doesn't criminal activity does not rise. If you're a victim of criminal activity that does not rise to persecution. I think, but look, first of all, is anybody doubting that the father was in fact killed and that there, and I mean, there, there is certainly other evidence with regard to the political motive. And that doesn't seem really to be what the, what the IJ was concerned about. The IJ just didn't seem to believe any of this happened. And there was these letters that seemed to indicate it happened. And he said, I'm not, essentially I'm not going to pay any attention to them because I, these people were illiterate. Well, your Honor, I think the IJ, the prior fact in this case, um, you know, maybe some parts are true. Some aren't true. That's the whole point. I think the immigration judge couldn't tell what is true and what isn't true. Is he really, um, uh, a farmer with a 10th grade in education, just driving people from rally to rally or see an active, active player in this political party? Uh, it was, he harassed, as some evidence seems to indicate that he submitted or was he beaten and, um, was he beaten, uh, just once in, in 1994. So I think that, um, that's the key in this case. I think the immigration judge didn't know what to believe, believe the letter from Mr. Mann that petitioner was harassed several times by security forces and doesn't mention the 1994 arrest or to believe this, uh, 13, um, page 1367. And when a trial of fact doesn't know, is there any contradiction between those two things? Um, well, again, your Honor, I think there could be, I mean the letter from man, obviously he knew Justin was sent. Why did he not mention the 1994 arrest? He was able to get that evidence from, um, Mr. Mann, the letter that talks about harassment. Um, if he was, he had the pull to get that information. He was high up in the party. Why doesn't it mention, why doesn't it mention the 1994, um, arrest? Uh, again, your Honor, uh, it is our position that the immigration judges, it could be way the other way, but that's not the standard review is, uh, the standard review is not reweighing of the evidence. Uh, and the evidence in this case does not compel a different decision. Thank you very much. You're out of time. Thank you for your argument. Um, Mr. Okay. Thank you very much. Okay. Thank you very much. The case of Singh versus Holder is submitted.
judges: Goodwin, Berzon, Ikuta